**KILPATRICK TOWNSEND & STOCKTON LLP**
Robert Potter (RP 5757)
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 775-8733
Facsimile:  (212) 775-8816
*rpotter@kilpatricktownsend.com*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L'ORÉAL USA CREATIVE, INC. and L'ORÉAL USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DMYTRO NARTOV, a/k/a Dmytri Nartov, individually and d/b/a *beautance.com*, *beauteca.com*, *makeupdirect.com*, *skincare-warehouse.com*, and *shopgator.com*, NARTOV VENTURES LLC, SKINCARE DIRECT LLC, and SUGARING GLOBAL LLC, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT** |

L'Oréal USA Creative, Inc. ("L'Oréal Creative") and L'Oréal USA, Inc. ("L'Oréal USA") (collectively, "L'Oréal"), by their attorneys Kilpatrick Townsend & Stockton LLP, state the following for their Complaint against Dmytro Nartov, a/k/a Dmytri Nartov, individually and d/b/a *beautance.com*, *beauteca.com*, *makeupdirect.com*, *skincare-warehouse.com*, and *shopgator.com*, Nartov Ventures LLC, Skincare Direct LLC, and Sugaring Florida LLC (collectively "Defendants"):

SUBSTANCE OF THE ACTION

1.      L'Oréal seeks injunctive and monetary relief against Defendants' acts of trademark counterfeiting, infringement, unfair competition, and false designation of origin in violation of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, unfair and deceptive trade practices under the laws of several states, including New York, N.Y. Gen. Bus. L. § 349, and unfair competition under New York common law.

2.      L'Oréal is among the most famous and respected producers of skin care products in the United States, with a long history of selling products of the highest level of quality, including through its SKINCEUTICALS® brand (among many others). L'Oréal's SKINCEUTICALS brand offers a complete line of advanced skin care products and solutions that have earned a reputation for delivering high quality, scientifically backed results. SKINCEUTICALS products are sold directly to consumers through medical professionals (such as dermatologists and plastic surgeons), "medi-spas," and other professionals in the skin care industry. SKINCEUTICALS products also are available online at *skinceuticals.com* and through authorized online resellers.

3.      L'Oréal has recently discovered that Defendants are using e-commerce websites—including sites registered to and/or otherwise associated with Defendant Dmytro Nartov at *beautance.com*, *beauteca.com*, *makeupdirect.com*, *skincare-warehouse.com*, and *shopgator.com*, as well as third-party websites including *ebay.com* and *walmart.com*—to market and sell skin care products bearing trademarks that are identical to, substantially indistinguishable from, or otherwise confusingly similar to L'Oréal's registered SKINCEUTICALS trademark and the other marks and indicia used on L'Oréal's SKINCEUTICALS line of products.

4.      Neither Defendants nor the foregoing websites are authorized resellers of any of L'Oréal's SKINCEUTICALS products.

5.      Defendants are falsely representing to the public that their offerings are new, genuine SKINCEUTICALS skin care products, when in fact Defendants' gels and sera are counterfeit and are materially different from the genuine articles.

6.      Because Defendants sell their counterfeit goods over the internet, customers are able to discover the fraud, if at all, only after paying for, receiving and opening Defendants' packaging. Worse, customers who are less familiar with L'Oréal's SKINCEUTICALS products may discover the fraud only after applying Defendants' products to their skin. Of course, some customers may never discover the fraud, and instead will falsely believe that the cheap imitations they purchased from Defendants are representative of L'Oréal's genuine SKINCEUTICALS products.

7.      Defendants are well aware of L'Oréal's rights in its SKINCEUTICALS mark and other relevant trademarks, and Defendants' conduct is willful.

8.      Defendants are passing off counterfeit goods to the unsuspecting public under L'Oréal's registered SKINCEUTICALS trademarks in a deliberate, bad faith effort to trade on the goodwill and prestige of those marks, each of which acts as a source identifier for L'Oréal and its premium SKINCEUTICALS products. By intentionally generating consumer confusion and unfairly competing with L'Oréal's genuine SKINCEUTICALS products, Defendants are eroding the substantial goodwill, value, and public recognition that L'Oréal has developed in its SKINCEUTICALS trademarks as connoting premium skin care solutions of the highest quality. Moreover, given the nature of the products at issue—topical gels and sera applied directly to the skin—Defendants' counterfeit goods pose a potential health and safety risk to consumers.

3

9.      By and through these deliberate, willful, and malicious acts, Defendants are depriving L'Oréal of the ability to control the quality of the products bearing L'Oréal's SKINCEUTICALS mark and other relevant trademarks, thus causing immediate and irreparable harm to L'Oréal and the public. Further, on information and belief, Defendants have generated substantial revenue as a result of their use of L'Oréal's relevant trademarks in connection with counterfeit goods.

10.     Accordingly, L'Oréal brings this action for federal trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair and deceptive trade practices under Section 349 of New York's General Business Law; and unfair competition under New York common law. L'Oréal seeks permanent injunctive relief as well as compensatory, exemplary, and punitive damages.

<u>THE PARTIES</u>

11.     Plaintiff L'Oréal Creative is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 10 Hudson Yards, New York, New York 10001. It is the owner of certain intellectual property rights that it licenses exclusively to Plaintiff L'Oréal USA, Inc. in the United States, including the trademarks at issue.

12.     Plaintiff L'Oréal USA, Inc. is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 10 Hudson Yards, New York, New York 10001. It is the exclusive licensee of L'Oréal Creative in the United States. It markets skin care, sun care, cosmetics, perfumes and hair care products throughout the United States, including products sold under the SKINCEUTICALS brand.

4

13.     On information and belief, Defendant Dmytro Nartov is an individual citizen of the State of New York and/or the State of Florida who resides and/or does business at 75 Maiden Lane, New York, New York 10038; 1 West Street, New York, New York 10004; 1040 Lytham Court, West Palm Beach, Florida 33411; and 1025 North Florida Mango Road Bay 6, West Palm Beach, Florida 33409, and otherwise does business in this District, including by selling counterfeit goods to customers in this District and throughout the country.

14.     On information and belief, Defendant Nartov Ventures LLC is a limited liability corporation organized and existing under the laws of Florida with a principal address at 1025 North Florida Mango Road, Suite 6, West Palm Beach, Florida 33409, and a mailing address at 1040 Lytham Court, West Palm Beach, Florida 33411. Florida corporate records identify Defendant Dmytro Nartov as Nartov Ventures's CEO and registered agent. On information and belief, Nartov Ventures does business in this District, including by participating directly or indirectly and at Defendant Dmytro Nartov's instruction in the sale of counterfeit goods to customers in this District and throughout the country.

15.     On information and belief, Defendant Skincare Direct LLC is a limited liability corporation organized and existing under the laws of Florida with a principal address and a mailing address both at 1040 Lytham Court, West Palm Beach, Florida 33411. Florida corporate records identify Defendant Dmytro Nartov as Skincare Direct's manager and Defendant Nartov Ventures as its registered agent. On information and belief, Skincare Direct does business in this District, including by participating directly or indirectly and at Defendant Dmytro Nartov's instruction in the sale of counterfeit goods to customers in this District and throughout the country.

5

16.     On information and belief, Defendant Sugaring Global LLC is a limited liability corporation organized and existing under the laws of Florida with a principal address and a mailing address both at 1025 North Florida Mango Road, Suite 6, West Palm Beach, Florida 33409. Florida corporate records identify Defendant Dmytro Nartov as Sugaring Global's manager and registered agent. On information and belief, Sugaring Global does business in this District, including by participating directly or indirectly and at Defendant Dmytro Nartov's instruction in the sale of counterfeit goods to customers in this District and throughout the country.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over L'Oréal's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

18.     This Court has personal jurisdiction over Defendants because Defendants (a) market, distribute, offer for sale, and sell goods that infringe L'Oréal's intellectual property within the State of New York; (b) regularly transact and conduct business within the State of New York; and (c) have otherwise made or established contacts with the State of New York sufficient to permit the exercise of personal jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to L'Oréal's claims occurred in this District. Venue also is otherwise proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because one or more Defendants are subject to the Court's personal jurisdiction with respect to this action.

FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.    L'Oréal and the SKINCEUTICALS Brand

20.    Since its founding in 1997, SkinCeuticals, Inc. has become known as an innovator in the skin care field by using technology to deliver superior skin care results. Its mission was and is to provide advanced skin care products backed by science. Its groundbreaking products, which represent the culmination of more than a decade of research, provide medical and skin care professionals and consumers with previously unavailable combinations of powerful antioxidants at high concentrations, each specifically intended for use on the skin.

21.    In 2005, SkinCeuticals, Inc. was acquired by L'Oréal, and the SKINCEUTICALS line of products is now distributed globally by the largest beauty company in the world.

22.    The SKINCEUTICALS brand represents L'Oréal's commitment to the highest level of innovation, performance, and quality, as well as an abiding dedication to providing advanced skin care backed by science—*i.e.*, to "PREVENT," "PROTECT," and "CORRECT." That unwavering commitment has helped make L'Oréal and its SKINCEUTICALS brand leaders in the skin care field, both in the United States and abroad. L'Oréal has devoted substantial resources to funding research at major medical institutions and contract research organizations to support the technology, develop the formulae, and conduct clinical trials as to SKINCEUTICALS products. The key ingredients in SKINCEUTICALS products are all professional quality, and a number of the studies performed on core SKINCEUTICALS products are peer reviewed.

23.     L'Oréal has made a substantial investment in brand protection and in controlling

the quality of the products offered under its SKINCEUTICALS brand. Its quality control

measures include, without limitation, imprinting packaging with unique covert and overt Anti-

Diversion/Quality Assurance codes to fight counterfeiting, theft, and diversion (discussed in

more detail below, *see infra* ¶ 39); randomly testing products while the production lines are

running; carefully selecting and monitoring its authorized online retailers and distributors; and

using tamper-resistant packaging.

24.     L'Oréal distributes its SKINCEUTICALS products through limited and tightly

controlled sales channels. SKINCEUTICALS products are made available to consumers

nationwide through medical professionals (such as dermatologists and plastic surgeons), medi-

spas and other premium spas and resorts, the luxury beauty retailer Blue Mercury, and other

professionals in the skin care industry. Products in the SKINCEUTICALS line are also sold to

consumers over the internet at *skinceuticals.com*, through authorized online retailers including

*bluemercury.com, dermstore.com, lovelyskin.com, skinstore.com*, and *skincarerx.com*, and

through a limited number of "flagship" retailers selling on their own respective websites.

L'Oréal is careful in choosing its distributors because they are often the public face of

L'Oréal's SKINCEUTICALS brand, and they have the skill and expertise to recommend

appropriate SKINCEUTICALS products based on a customer's particular skin care needs.

25.     L'Oréal has consistently packaged and marketed its products in such a way as to

distinguish those products from L'Oréal's competitors and identify L'Oréal as the source of

those products. All packaging for L'Oréal's SKINCEUTICALS products prominently bears the

SKINCEUTICALS mark, as well as another trademark or product name identifying the specific

product. These include products bearing one or more of the following registered trademarks:

8

SKINCEUTICALS®, SKINCEUTICALS HYDRATING B5 GEL®, C E FERULIC®, and PHLORETIN CF®. Each of the products bearing those marks has achieved popular and critical success in the highly competitive skin care industry, and has helped L'Oréal remain a leader in the field.

26.     L'Oréal's SKINCEUTICALS products have become widely known for providing effective skin care solutions. During the past three years alone, L'Oréal has invested tens of millions of dollars in promoting and advertising its SKINCEUTICALS products, including through print, video, and online advertising (including social media and search engine marketing), as well as participation in industry conferences, advisory panels, and professional business-to-business and educational events. L'Oréal also promotes its products through its SKINCEUTICALS website at *skinceuticals.com*, which receives more than 1.5 million annual visitors. All of these promotional efforts, like the products and packaging themselves, prominently bear or include the SKINCEUTICALS mark.

27.     Due in large part to the extraordinary results they produce, L'Oréal's SKINCEUTICALS products have achieved great commercial success and high levels of recognition among consumers and the trade. In the years since 2005, when L'Oréal acquired the brand, tens of millions of units of SKINCEUTICALS products have been sold, generating hundreds of millions of dollars in gross revenue, and L'Oréal's SKINCEUTICALS products have received more than a hundred industry awards.

28.     In the minds of consumers, the trademarks and trade dress found on L'Oréal's SKINCEUTICALS products symbolize a line of premium products having the highest level of quality, backed by scientific studies and achieving professional results. Those marks also identify and distinguish L'Oréal as the single source of those products. Through its continuous,

substantially exclusive, and lengthy use of its SKINCEUTICALS trademark and the other

marks and indicia used on L'Oréal's SKINCEUTICALS line of products, L'Oréal has

developed substantial goodwill, value and recognition in those marks.

B.     L'Oréal Creative's U.S. Trademark Registrations

29.     In addition to the common law rights L'Oréal has developed through use of the

marks and dress found on its SKINCEUTICALS products generally, L'Oréal Creative is the

owner of a federal registration for each of the following trademarks, among others:

- SKINCEUTICALS (U.S. Reg. No. 2,156,487);

- SKINCEUTICALS HYDRATING B5 GEL (U.S. Reg. No. 2,930,299);

- C E FERULIC (U.S. Reg. No. 3,497,589); and

- PHLORETIN CF (U.S. Reg. No. 3,574,640).

True and correct copies of the foregoing registration certificates, along with the status page for

each registration (found at *uspto.gov*), are attached hereto as **Exhibit A**.

30.     L'Oréal Creative's registrations above have become incontestable pursuant to

Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore, pursuant to Section 33(b), 15

U.S.C. § 1115(b), those registrations are conclusive evidence of the validity of the registered

marks and of the registration of those marks, of L'Oréal Creative's ownership of the registered

marks, and of L'Oréal Creative's exclusive right to use the registered marks in commerce on or

in connection with the specified goods.

C.     Defendants' Marketing and Sale of Counterfeit Versions of L'Oréal's SKINCEUTICALS
       Products

31.     Despite L'Oréal's established trademark rights, and with actual or constructive

knowledge of those rights, Defendants were and are promoting, distributing, offering for sale,

and selling goods bearing trademarks and other indicia that are identical to, substantially

indistinguishable from, or otherwise confusingly similar to L'Oréal's Registered Marks. Defendants' counterfeit goods are identical in type to those listed in L'Oréal's registrations.

32.     Defendants' unlawful goods have not been manufactured, licensed, authorized, sponsored, endorsed, or approved by L'Oréal, and Defendants are not associated, affiliated, or connected with L'Oréal, or licensed, authorized, sponsored, endorsed, or approved by L'Oréal in any way.

33.     L'Oréal USA's Corporate Security & Brand Protection ("CSBP") team regularly purchases and examines suspected counterfeit and diverted products from unauthorized online and "brick and mortar" locations. In December 2018, the CSBP team identified a counterfeit version of a SKINCEUTICALS product that it purchased from a third party "marketplace seller" on *walmart.com*. After conducting an investigation, the CSBP team determined that the seller was apparently Defendant Dmytro Nartov, or one of the Defendant businesses operating from Mr. Nartov's address and acting at his instruction.

34.     L'Oréal USA's CSBP team subsequently confirmed through additional test purchases that Mr. Nartov, directly and/or through the Defendant businesses he controls, was selling similar counterfeit versions of SKINCEUTICALS products through numerous other websites. These include websites registered publicly in Mr. Nartov's own name (*beautance.com*, *beauteca.com*, and *makeupdirect.com*), as well as websites registered privately but that have public return policies requiring returns to be sent to one of Defendants' registered addresses in West Palm Beach (*shopgator.com* and *skincare-warehouse.com*), and third-party e-commerce sites including *ebay.com* and, *walmart.com*.

35.     To date, L'Oréal USA's CSBP team has purchased 79 items purporting to be genuine units of four of L'Oréal's most popular SKINCEUTICALS products (some offered in

their European packaging) from seven different websites associated with Defendants. L'Oréal subsequently determined that each and every one of these products was counterfeit, as discussed further below (*see infra* ¶¶ 39-41). Certain of these products were shipped without complete packaging or instructions for use.

36.     Of these 79 units, 76 of them were delivered in packaging indicating a return address of 1025 North Florida Mango Road Bay 6 in West Pam Beach, Florida. This address is associated with each of the four Defendants in Florida's corporate records. The other three units were shipped with a return address of 1040 Lytham Court in West Palm Beach; on information and belief, this is Defendant Nartov's home address, and it is associated with the other three Defendants in Florida's corporate records.

37.     Notably, there have been numerous consumer complaints regarding Defendants' sale of counterfeit goods. The Better Business Bureau ("BBB"), for example, has published multiple consumer complaints about at least **four** of Defendants' websites:

- *makeupdirect.com:* Nine complaints, many of which claim the website sold counterfeit products, including one dated May 21, 2019 that reads simply:  "**selling fake Skinceuticals**."

- *shopgator.com:* The BBB has placed an alert for shopgator.com, noting a **"Pattern of Complaints,"** and stating "**The BBB opened an investigation on this firm due to the amount of inquiries we have received**."

- *beautance.com:* Eight complaints, most of which involve fake or inferior products and poor customer service.

- *beauteca.com:* Two complaints about the sale of fake products, both from earlier this year.

True and correct printouts of the complaints referenced above, taken from the BBB's website at *bbb.org*, are attached hereto as **Exhibit B**.

D.    Defendants' SKINCEUTICALS Products are Plainly Counterfeit

38.    To date, L'Oréal USA's CSBP team has purchased from Defendants:

(a) 27 products purporting to be L'Oréal's SKINCEUTICALS HYDRATING $B_5$ GEL®
(30 mL) (European packaging), via the websites located at beautance.com, beauteca.com,
ebay.com/usr/sugaringstore, makeupdirect.com, shopgator.com, skincarewarehouse.com, and
walmart.com (seller name: "Sugaring");

(b) 32 products purporting to be L'Oréal's SKINCEUTICALS® C E FERULIC®
serum (30 mL), via the websites located at beautance.com, beauteca.com, makeupdirect.com,
and shopgator.com;

(c) 15 products purporting to be L'Oréal's SKINCEUTICALS® PHLORETIN CF®
serum (30 mL), via the websites located at beauteca.com, ebay.com/usr/sugaringstore,
makeupdirect.com, shopgator.com, skincarewarehouse.com, and walmart.com (seller name:
"Sugaring"); and

(d) 5 products purporting to be L'Oréal's SKINCEUTICALS® H.A. INTENSIFIER
serum (30 mL) (European packaging), via the websites located at beauteca.com and,
skincarewarehouse.com.

L'Oréal has confirmed that every single one of these 79 products is counterfeit
("Defendants' Counterfeit Products").

39.    One of the most obvious signs that Defendants' Counterfeit Products are
counterfeit is that each lacks the authentic overt and covert Anti-Diversion/Quality Assurance
("AD/QA") codes that L'Oréal places on genuine versions of these (and other) products. The

overt AD/QA code is a visible barcode located on the side of the secondary packaging (*i.e.*, the box), while the covert code located on the front of the secondary packaging is invisible to the naked eye and must be viewed through use of specialized equipment. Each AD/QA code is a unique identifier—a "license plate"—applied to the product's packaging, which enables L'Oréal to determine whether products are stolen, diverted or counterfeit on an item by item basis. When a relevant product lacks a genuine AD/QA code entirely, L'Oréal can confirm the product is counterfeit. None of Defendants' Counterfeit Products bears a genuine covert or overt AD/QA code.

40.     Defendants' Counterfeit Products also contain slight variations in font, color, and label size on the primary (bottle) and secondary (box) packaging as compared to genuine SKINCEUTICALS products. There also are material differences in the build quality and plastic and rubber components of the dispensers (bulb droppers) as between the genuine and counterfeit units. Many of Defendants' Counterfeit Products also lack the batch code found on genuine SKINCEUTICALS packaging; and for those that do bear a batch code, the code is easily smeared with a fingertip, which is not the case with genuine SKINCEUTICALS products. Some of these differences are observable in the representative images on the following pages:



*Packaging of counterfeit Hydrating B₅ product (right) shows "SkinCeuticals" in a larger font; the counterfeit dropper has a different shape and a matte finish; and the counterfeit features a plastic seal without perforations or pull tab (European packaging shown)*



*Fake batch code on counterfeit Hydrating B₅ product (right) rubs off with finger; bottom of counterfeit bottle is less concave (European packaging shown)*



*Different fonts and coloring on counterfeit CE Ferulic product (right), which also lacks the registered trademark symbol ®*




*Font, coloring, and label size are different, among other differences, as between genuine Phloretin CF product (left in each photo) and counterfeit (right in each photo)*



*Counterfeit Phloretin CF product (right) is missing batch code*



*Counterfeit H.A. Intensifier product (right) features different coloring on the "SkinCeuticals" banner; the counterfeit dropper has a different shape; and the counterfeit features a plastic seal without perforations or pull tab (European packaging shown)*

41.    L'Oréal has also performed third-party laboratory testing on representative units of Defendants' Counterfeit Products, all of which were confirmed to have different formulations than genuine SKINCEUTICALS products. Specifically, the units tested from Defendants' Counterfeit Products either lack certain key ingredients entirely or had different amounts than are found in genuine SKINCEUTICALS products.

42.    Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

FIRST CLAIM FOR RELIEF
FOR TRADEMARK COUNTERFEITING AND
INFRINGEMENT UNDER THE LANHAM ACT
(15 U.S.C. § 1114)
*(on behalf of L'Oréal Creative only)*

43.    L'Oréal repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

44.    L'Oréal Creative owns federal trademark registrations for the SKINCEUTICALS, SKINCEUTICALS HYDRATING $B_5$ GEL, C E FERULIC, and PHLORETIN CF marks in connection with skin care products (the "Registered Marks").

45.    L'Oréal Creative's Registered Marks and the goodwill of the products associated with them in the United States are of great and incalculable value, are distinctive, and have become associated in the public mind with products of the highest quality and reputation emanating from L'Oréal as their source.

46.    Defendants have used in commerce spurious marks that are identical to, or substantially indistinguishable from, or confusingly similar to L'Oréal Creative's Registered Marks without L'Oréal's authorization. Defendants have intentionally used marks they know to be counterfeit.

47.    Defendants' unauthorized use of L'Oréal Creative's Registered Marks or counterfeits, copies, reproductions, or confusingly similar imitations of L'Oréal Creative's

18

Registered Marks in connection with the sale and distribution of counterfeit skin care products is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' goods, and is likely to deceive the public into believing that Defendants' goods are sponsored, endorsed, or approved by, or are otherwise associated with, L'Oréal.

48.     Defendants' unauthorized use of L'Oréal Creative's Registered Marks or counterfeits, copies, reproductions, or confusingly similar imitations of L'Oréal Creative's Registered Marks falsely represents Defendants' goods as emanating from or being authorized by L'Oréal, thus passing off Defendants' goods as L'Oréal's, and places beyond L'Oréal's control the quality of goods offered and sold under the Registered Marks.

49.     Defendants' unauthorized use of L'Oréal Creative's Registered Marks or counterfeits, copies, reproductions, or confusingly similar imitations of L'Oréal Creative's Registered Marks is willful, deliberate and done with the intent to reap the benefit of L'Oréal's goodwill.

50.     Defendants' conduct constitutes trademark counterfeiting and infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 and makes this an "exceptional case" under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

51.     L'Oréal is entitled to damages (including treble damages), costs, and attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

52.     Further, the aforesaid conduct of Defendants is causing irreparable injury to L'Oréal and to its goodwill and reputation, and will continue both to damage L'Oréal and to deceive the public unless enjoined by this Court. L'Oréal has no adequate remedy at law.

SECOND CLAIM FOR RELIEF
FOR UNFAIR COMPETITION AND FALSE DESIGNATION
OF ORIGIN UNDER THE LANHAM ACT
(15 U.S.C. § 1125(A))

53.     L'Oréal repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

54.     Defendants' unauthorized use of L'Oréal Creative's Registered Marks, confusingly similar variants thereof, and/or other indicia of L'Oréal's SKINCEUTICALS line of products in connection with Defendants' goods constitutes unfair competition and a false designation of origin and false description or representation that L'Oréal certifies the legitimacy, quality and authenticity of such products, when in fact it does not, and is thereby likely to deceive the public.

55.     Defendants' unauthorized use of L'Oréal Creative's Registered Marks or confusingly similar variants thereof falsely represents that Defendants' goods are associated with L'Oréal when in fact they are not, and such use is thereby likely to deceive the public.

56.     Defendants' acts of unfair competition are willful and deliberate and committed with an intent to reap the benefit of the goodwill and reputation associated with L'Oréal Creative's Registered Marks.

57.     Defendants' conduct violates Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) and makes this an "exceptional case" under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

58.     L'Oréal is entitled to damages (including treble damages), costs, and attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

59.     The aforesaid conduct of Defendants is causing irreparable injury to L'Oréal and to its goodwill and reputation, and will continue both to damage L'Oréal and to deceive the public unless enjoined by this Court. L'Oréal has no adequate remedy at law.

THIRD CLAIM FOR RELIEF
UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER NEW YORK LAW
(N.Y. GEN. BUS. LAW § 349)

60.     L'Oréal repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

61.     By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of New York's General Business Law § 349, and upon information and belief the unfair and deceptive trade practices statutes of several states.

62.     The public is likely to be damaged as a result of Defendants' deceptive and materially misleading trade practices or acts.

63.     The aforesaid conduct of Defendants is causing irreparable injury to L'Oréal and to its goodwill and reputation, and will continue to both damage L'Oréal and deceive the public unless enjoined by this Court. L'Oréal has no adequate remedy at law.

FOURTH CLAIM FOR RELIEF
COMMON LAW UNFAIR COMPETITION

64.     L'Oréal repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

65.     Defendants' unauthorized advertising, distribution and sale of Defendants' Counterfeit Products constitutes a false designation of origin and a false description or representation that Defendants' Counterfeit Products are authorized by L'Oréal, and Defendants' acts are thereby likely to confuse consumers.

66.     Defendants are using L'Oréal Creative's Registered Marks or confusingly similar variants thereof with full knowledge that they are associated exclusively with L'Oréal and exclusively designate L'Oréal's SKINCEUTICALS products. Defendants' acts of unfair competition are willful and deliberate and with an intent to reap the benefit of L'Oréal's goodwill and reputation.

67.     Defendants' unauthorized advertising, distribution and sale of Defendants' Counterfeit Products constitutes common law unfair competition.

68.     The aforesaid conduct of Defendants is causing irreparable injury to L'Oréal and to its goodwill and reputation, and will continue to both damage L'Oréal and deceive the public unless enjoined by this Court. L'Oréal has no adequate remedy at law.

PRAYER FOR RELIEF

WHEREFORE, L'Oréal prays for judgment as follows:

1.     That a permanent injunction be issued enjoining Defendants,  all employees, servants, agents, affiliates, representatives, attorneys, successors, assigns, and entities owned or controlled by any Defendant, and all those in active concert and participation with any of them, including but not limited to persons and entities providing any services to or in connection with the domain names *beautance.com*, *beauteca.com*, *makeupdirect.com*, *skincare-warehouse.com*, *shopgator.com*  or the websites to which any of those domain names resolve, and who receives notice directly or otherwise of such injunction from:

        (a)     importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any counterfeit goods, and any other products that tend to deceive, mislead, or confuse the public into believing that

Defendants' products in any way originate with, are sanctioned by, or are affiliated with L'Oréal;

(b)    imitating, copying, or making unauthorized use of L'Oréal Creative's Registered Marks or other indicia of L'Oréal's SKINCEUTICALS line of products;

(c)    importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of L'Oréal Creative's Registered Marks or any other indicia of L'Oréal's SKINCEUTICALS line of products;

(d)    using L'Oréal Creative's Registered Marks or any other indicia of L'Oréal's SKINCEUTICALS line of products, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in such fashion as to relate or connect, or tend to relate or connect, such product in any way to L'Oréal or to any goods sold, manufactured, sponsored, approved by or connected with L'Oréal;

(e)    using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any product manufactured, distributed or sold by any of the Defendants is in any manner associated or connected with L'Oréal, or is sold, manufactured, licensed, sponsored, approved or authorized by L'Oréal;

(f)    engaging in any other activity constituting unfair competition with L'Oréal, or constituting infringement of L'Oréal Creative's Registered Marks or any other indicia of L'Oréal's SKINCEUTICALS line of products;

23

(g)      disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any physical evidence, products, components of products, or documents (including computer records) of any kind, including inventory, packaging, invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, and/or distribution of any merchandise bearing L'Oréal Creative's Registered Marks or any other indicia of L'Oréal's SKINCEUTICALS line of products, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

(h)      effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (g) above; and

(i)      instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h) above;

2.      Directing that Defendants make available to L'Oréal for review, inspection and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents and things concerning all transactions relating to the purchase or sale of counterfeit goods or any other products or packaging incorporating a simulation, reproduction, counterfeit, copy or colorable imitation of L'Oréal Creative's Registered Marks or any other indicia of L'Oréal's SKINCEUTICALS line of products; and provide to L'Oréal the names, addresses and all other

contact information in their possession (*e.g.*, telephone numbers, fax numbers) for the source(s) of such products and packaging, including all manufacturers, distributors and/or suppliers;

3.  Directing that Defendants deliver to L'Oréal's counsel for destruction at Defendants' costs all signs, products, components of products, liquids, gels, sera, substances, packaging, promotional material, advertising material, catalogs and any other item that bears, contains or incorporates L'Oréal Creative's Registered Marks or any other indicia of L'Oréal's SKINCEUTICALS line of products, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

4.  Directing that Defendants recall from all distributors, retailers or other recipients any and all counterfeit goods as well as all other products and packaging sold or distributed by Defendants under or in connection with L'Oréal Creative's Registered Marks or any other indicia of L'Oréal's SKINCEUTICALS line of products, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and, upon recall, to deliver such goods up to L'Oréal's counsel for destruction at Defendants' cost;

5.  Awarding L'Oréal its actual damages, trebled pursuant to 15 U.S.C. § 1117(a) and (b), arising out of Defendants' willful and unlawful acts, and requiring Defendants to account for and pay over to L'Oréal three times the profits realized by Defendants from counterfeiting and infringement of L'Oréal Creative's Registered Marks and unfair competition with L'Oréal; or, in the alternative and at L'Oréal's election, awarding L'Oréal statutory damages pursuant to 15 U.S.C. § 1117(c);

6.  Awarding L'Oréal its actual damages, trebled pursuant to N.Y. Gen. Bus. L. § 349(h), arising out of Defendants' acts of willful deceptive trade practices;

7.      Awarding L'Oréal exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

8.      Awarding L'Oréal interest, including pre-judgment interest, on the foregoing sums;

9.      Awarding L'Oréal its costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a);

10.     Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods offered, advertised or promoted by or on behalf of Defendants are authorized by L'Oréal or related in any way to products sold under L'Oréal Creative's Registered Marks or are the same as, or equivalent or comparable to, L'Oréal's SKINCEUTICALS line of products;

11.     Directing that Defendants file with the Court and serve upon L'Oréal's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the above; and

12.     Awarding L'Oréal such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

L'Oréal respectfully demands a trial by jury on all claims and issues so triable.

DATED:  July 30, 2019                 Respectfully submitted,

                                      KILPATRICK TOWNSEND & STOCKTON LLP


                                      By:   */s/ Robert Potter*
                                            Robert Potter (RP 5757)
                                            *rpotter@kilpatricktownsend.com*
                                            The Grace Building
                                            1114 Avenue of the Americas
                                            New York, New York  10036
                                            Telephone:  (212) 775-8733
                                            Facsimile:  (212) 775-8816

                                            *Attorneys for Plaintiffs*